366 A.2d 923
Marie E. LEWIS et al.

v.

Joseph REID et al., Appellants.

Superior Court of Pennsylvania.
Argued Sept. 10, 1975.
Decided April 22, 1976.
On Reargument Dec. 20, 1976.

James J. McEldrew, Philadelphia, for appellant.

Charles S. Lieberman, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This is an appeal from the order of the Court of Common Pleas of Philadelphia County granting the plaintiffs' (appellees herein) motion to set aside a judgment of non pros which was originally entered as a result of plaintiffs' failure to answer supplemental interrogatories.

The litigation arose as a result of an automobile accident in which the plaintiffs, while passengers in a vehicle owned by the defendant, Discount Rent-N-Drive Systems, Inc., and operated by defendant Reid, were injured when their vehicle was involved in a collision with the automobile of defendant Fisher. Suit was instituted by summons on September 21, 1965, and the complaint was subsequently filed on March 15, 1966.

On November 13, 1969, the defendants filed supplemental interrogatories to the plaintiffs. Having failed to receive timely answers to these interrogatories, the defendants filed a motion for sanctions on March 3, 1970. By order of March 17, 1970, the plaintiffs were directed to answer the supplemental interrogatories within ninety (90) days or suffer a judgment of non pros. On June 26, 1970, a judgment of non pros was entered against the plaintiffs for failing to comply with the aforesaid order of March 17, 1970.

Thereafter, the case lay virtually dormant for over four years [1] until July 8, 1974, when the plaintiffs filed a petition to "strike open" [2] the judgment of non pros.

On November 15, 1974, the deposition of plaintiffs' counsel, Malcolm P. Rosenberg, Esquire, was taken in support of the petition to "strike open."

By order of December 9, 1974, the instant case as well as twelve others in which judgments of non pros had been entered against a number of plaintiffs represented by Attorney Rosenberg were consolidated for argument and assigned to the Honorable Stanley M. Greenberg. On May 14, 1975, Judge Greenberg ordered that the judgment of non pros in the instant case, as in the others, be set aside. This appeal followed.[3]

1. The only entry on the docket during this period was a suggestion of Death and Substitution of a Personal Representative as to the plaintiff, Margaret Cochran, filed on July 24, 1973.

2. Since the appellee's petition was not directed to defects in the record, his petition should have been simply entitled petition to open. *Mazer v. Sargent Electric Company*, 407 Pa. 169, 180 A.2d 63 (1962). Like the lower court, however, we will treat the petition as merely one to open. See, e. g., *Goldstein v. Graduate Hospital of The University of Pa.*, 441 Pa. 179, 272 A.2d 472 (1971); *Mazer v. Sargent Electric Co.*, supra.

3. Parenthetically, we note that no appeals have been filed in the other 12 cases affected by Judge Greenberg's order of May 14, 1975.

A petition to open a judgment is addressed to the equitable powers of the court. *Johnson v. Mulhall*, 230 Pa.Super. 183, 326 A.2d 439 (1974); *Matyas v. Albert Einstein Medical Center*, 225 Pa.Super. 230, 310 A. 2d 301 (1973). Accordingly, our Supreme Court has stated that: "A request to open a judgment of non pros is by way of grace and not of right. Its grant or refusal is peculiarly a matter for the lower court's discretion. An appellate court may not reverse the lower court's ruling unless an abuse of discretion is clearly evident: *Brigham v. Elgin's of Phila.*, 406 Pa. 99, 176 A.2d 404 (1962)." *Mazer v. Sargent Electric Co.*, 407 Pa. 169, 171, 180 A.2d 63, 64 (1962). A court will not exercise its discretion and open a judgment of non pros unless three factors coalesce: (1) a petition to open the judgment must be promptly filed; (2) there must be a reasonable explanation or excuse for the default; and (3) facts constituting grounds for a cause of action must be alleged. *Goldstein v. Graduate Hospital of The U. of Pa.*, supra; *Thorn v. Clearfield Borough*, 420 Pa. 584, 278 A.2d 298 (1966); *White v. Alston*, 231 Pa.Super. 438, 331 A.2d 765 (1974); *Matyas v. Albert Einstein Medical Center*, supra.

Instantly, we are constrained to conclude that the appellees have failed to satisfy the first two of these three requirements. Accordingly, the lower court abused its discretion in opening the judgment.

In attempting to excuse both their lack of diligence in filing a petition to open and their failure to timely answer the supplemental interrogatories, the appellees have offered one explanation. In this regard, the appellees' attorney, Malcolm P. Rosenberg, testified that it was through his neglect alone that both the interrogatories were not timely answered and the petition to open was not filed until over four years after the judgment was entered. The appellees contend, however, that Attorney Rosenberg's negligence was excusable in light of the un-

fortunate and continuous personal tragedies he endured for almost eight years. The opinion of the lower court, in pertinent part, discusses Attorney Rosenberg's tragic domestic problems as follows:

"Counsel revealed that his marital relationship began deteriorating in 1966, and became progressively weaker through 1967. While he had hoped that his wife's pregnancy in 1968 would help improve their marriage, her giving birth to a daughter with a severe birth defect made matters even worse. This child has been hospitalized for lengthy periods of time and has already undergone several major operations, including ones on her brain and spine, and to date, she still requires constant care and treatment. Counsel was frequently required to leave the office to attend to his daughter as his wife was unable to accept their child and unwilling to care for her. This led to great conflicts between them, which resulted in severe marital stress and emotional problems for both of them, such that each sought professional treatment. Their marriage finally ended in divorce and a long and bitter battle over custody of their children ensued.

"Counsel testified that because of these occurrences and the severe emotional strain that he underwent, not only was he unable to perform the legal work required in many of the cases in which he had been retained, but he was unable to realize how he was jeopardizing his clients' cases as well as his own career. As these problems lessened and as counsel recovered from the mental and emotional strain caused by them, he became aware that he had ignored his duties to his clients and took steps to correct matters, among which was the filing of the petition to 'Strike/Open' in this case and in twelve other cases where judgments of non pros had also been entered."

While Mr. Rosenberg's domestic problems were most unfortunate, we do not believe that under the cir-

cumstances this excuses his failure to answer the supplemental interrogatories. A period of approximately seven months expired from the date the supplemental interrogatories were filed until the judgment of non pros was entered on June 26, 1970. The appellees concede that most of the information necessary to answer the interrogatories was in Mr. Rosenberg's possession during this seven month period. Appellees further acknowledge that it would have been a simple task for Mr. Rosenberg to have the information in his possession typed up into answers to the interrogatories and have his secretary file them with the Prothonotary's Office. Nonetheless appellees contend that because of Mr. Rosenberg's severe domestic problems he was not capable of even delegating this routine task to his secretary. It is our opinion, however, that if Mr. Rosenberg's personal problems were so all consuming then it was his obligation to take reasonable measures to protect the rights of his clients. Unfortunately, Mr. Rosenberg did not inform his clients of his dilemma; nor did he associate himself with another attorney until February of 1974; and he never advised his clients to engage other counsel. Furthermore, Mr. Rosenberg's failure to diligently prosecute the instant action can hardly be dismissed as excusable neglect where the record reveals that throughout the duration of his personal hardships, including the seven months the answers to the interrogatories were outstanding, he continued to maintain a functioning law practice. Indeed, Mr. Rosenberg testified that during the entire course of his personal problems he accepted new clients, instituted and tried suits in Philadelphia and surrounding counties, negotiated settlements, accepted fees, etc. In view of the continuing nature of Mr. Rosenberg's overall law practice, we believe it was an abuse of discretion to excuse his failure to timely proceed with the instant action, despite his personal problems.

In *Thorn v. Clearfield Borough*, 420 Pa. 584, 218 A.2d 298 (1966) the Supreme Court held that the lower court

abused its discretion in refusing to open a judgment of non pros which was entered four months after the plaintiffs had been ruled to file a complaint. In reversing the lower court, the Supreme Court noted that the plaintiffs' attorney suffered a heart relapse within two weeks after he was served with a praecipe to file a complaint. Testimony by the attorney's physician established that although the attorney did perform some professional tasks during the four month period prior to the entry of judgment, he was physically incapable of performing all of his duties. On these facts, the Court held "that the diminished health and ability of appellants' attorney, followed by his death, are equitable considerations sufficient to set aside a judgment of non pros, and reasonably explain the reason for the delay in filing the complaint." Supra, 420 Pa. at 587.

At first blush, it would appear that the same "equitable considerations" which motivated the Court to set aside the judgment in *Thorn*, are present in the instant appeal. That is not the case however. In *Thorn* the attorney was not physically capable of performing all of his professional duties. In the case at bar, while we do not wish to minimize Attorney Rosenberg's unfortunate plight, we cannot ignore the fact that he was not incapacitated by personal illness. Furthermore, in *Thorn* the Court noted that the petition to open was timely filed. In the present case the petition to open was not filed until over four years after the judgment of non pros was docketed. This certainly cannot be considered timely.

In addition, the Court in *Thorn* felt that the petitioners had no way of knowing their case was not being diligently prosecuted and should not be denied their day in court because of their attorney's ill health. With respect to the instant appeal, we believe it would be unrealistic to hold that the appellees had no way of knowing their suit was not being diligently pursued where almost five years elapsed from the institution of the suit until the

judgment was entered, and another four years transpired before the petition to open was filed.

Finally, as previously alluded to, we believe the lower court abused its discretion in holding that the petition to open was timely filed. To explain the more than four year delay in filing their petition to open, the appellees have submitted the same explanation they offered for their failure to file answers to the supplemental interrogatories, viz., the personal problems of their counsel. This explanation is unacceptable for the same reasons we noted in rejecting the appellees' explanation as to why the answers to the supplemental interrogatories were not seasonably filed. Furthermore, on at least two occasions, September 30, 1971, and late 1972, Attorney Rosenberg met with appellants' counsel concerning Mr. Rosenberg's intent to institute proceedings to set aside the judgment. Nevertheless, Mr. Rosenberg did not file the petition to open until July 8, 1974. Further indication of Mr. Rosenberg's awareness and contact with the instant case is evidenced by his filing of the suggestion of death as to the plaintiff Margaret Cochran on July 24, 1973. Despite his obvious awareness of the necessity to take prompt action, Mr. Rosenberg again failed to do so. Notwithstanding our sympathy for Mr. Rosenberg's personal plight, we cannot in good conscience accept his excuse for these delays.

In the final analysis then, we conclude that, despite Mr. Rosenberg's personal hardships, the lower court abused its discretion in opening the judgment of non pros in view of the fact that Mr. Rosenberg maintained a functioning law practice throughout the course of his personal problems and, furthermore, was obviously aware of the status of the instant case.

While we are not unmindful of the consequences of our decision for the appellees, we cannot ignore the implicit prejudice visited upon the appellants by opening a judg-

ment which was entered over four years prior to any action by the appellees.

Order reversed.

HOFFMAN, J., files a concurring opinion.

SPAETH, J., files a dissenting opinion, in which PRICE, J., joins.

HOFFMAN, Judge (concurring) :

I join in the majority's disposition of the instant case. However, considerable confusion has resulted in this area because two lines of cases involving judgments of non pros have developed. I take this opportunity to identify the applicability of each.

The first line of cases declares that "[a] lower court properly enters a judgment of non pros 'when a party to the proceedings has shown a want of due diligence in failing to proceed with reasonable promptitude, and there is no compelling reason for the delay, and the delay has caused some prejudice to the adverse party . . .' *James Bros. Co. v. Union Banking Co. of Dubois,* 432 Pa. 129, 132, 247 A.2d 587 (1968)." *Kennedy v. The Bulletin Company,* 237 Pa.Super. 66, 68, 346 A.2d 343, 344, 345 (1975). See also, *Gallagher v. Jewish Hospital Association of Philadelphia,* 425 Pa. 112, 228 A.2d 732 (1967) ; *Aldridge v. Great Atlantic & Pacific Tea Company,* 394 Pa. 57, 145 A.2d 695 (1958) ; *Rizzo v. Pittsburgh Railways Company,* 226 Pa.Super. 566, 323 A.2d 174 (1974); *Poluka v. Cole,* 222 Pa.Super. 500, 205 A.2d 132 (1972). The second line of cases states that the criteria for opening a judgment of non pros are " '(1) the petition should be timely filed; (2) the reason for the default reasonably explained or excused; (3) that facts constituting grounds for a cause of action be alleged.' *Thorn v. Clearfield Borough,* 420 Pa. 584, 586, 218 A.2d 298, 299 (1966)." *Goldstein v. Graduate Hospital of The University of Pennsylvania,* 441 Pa. 179, 182, 272 A.2d 472, 473 (1971). See also, *Mazer v. Sargent Electric*

*Company,* 407 Pa. 169, 180 A.2d 63 (1962) ; *White v. Alston,* 231 Pa.Super. 438, 331 A.2d 765 (1974) ; *Boyles v. Sullivan,* 230 Pa.Super. 453, 326 A.2d 440 (1974) ; *Matyas v. Albert Einstein Medical Center,* 225 Pa.Super. Ct. 230, 310 A.2d 301 (1973). Superficially, it appears that when a plaintiff appeals from the entry of a judgment non pros, the judgment of non pros will be affirmed if the defendant has been prejudiced by the delay. When the plaintiff appeals from an order denying a petition to open a judgment of non pros, normal opening judgment rules, which do not include a showing of prejudice, apply. If the cases are analyzed further, however, it becomes apparent that the necessity for demonstrating prejudice will depend on the reason that the judgment of non pros was entered.

A judgment of non pros will be entered in two basic situations. First, a judgment of non pros may be imposed as a *sanction* pursuant to the rules of civil procedure. See Rules 1037(a) and 4019(c)(3), Pa.R.C.P. In this situation, the non pros is imposed because the plaintiff has failed to comply with a court order; there is no requirement that prejudice be demonstrated. If the plaintiff files a petition to open, he need only show that his petition to open was timely filed, that his non-compliance is explainable or excusable, and that facts exist which constitute grounds for his cause of action. See e. g., *Goldstein v. Graduate Hospital of The University of Pennsylvania,* supra; *Thorn v. Clearfield Borough,* supra; *White v. Alston,* supra; *Boyles v. Sullivan,* supra; *Matyas v. Albert Einstein Medical Center,* supra.

A judgment of non pros may also be entered when the plaintiff has failed to prosecute his action within a reasonable time. In order to demonstrate that he is entitled to a judgment of non pros under these circumstances, the defendant must not only show a want of due diligence in the prosecution of the action, but also that he has suffered prejudice as a result of the delay. See, e. g., *Gal-*

*lagher v. Jewish Hospital Association of Philadelphia,*
supra; *James Bros. Co. v. Union Banking Co. of Dubois,*
supra; *Aldridge v. Great Atlantic & Pacific Tea Compa-
ny,* supra; *Gaito v. Matson,* 228 Pa.Super. 288, 323 A.2d
753 (1974); *Rizzo v. Pittsburgh Railways Company,* su-
pra; *Poluka v. Cole,* supra. Prejudice is a prerequisite to
securing a judgment of non pros under these circum-
stances. When one challenges the entry of a judgment
of non pros under this situation, therefore, prejudice nec-
essarily is an element that must be considered. If the
plaintiff files a petition to open, he must demonstrate
that he meets the three tests for opening a judgment,
and also that the defendant has not been prejudiced.

In the instant case, the judgment of non pros was en-
tered as a *sanction* for not answering the supplemental
interrogatories. Thus, the appellant was not required to
demonstrate prejudice in order to secure the judgment of
non pros. In determining whether this judgment should
be opened, therefore, prejudice is not a relevant factor.
Because the majority correctly applied the principles
governing the opening of judgments, I concur.

SPAETH, Judge (dissenting) :

One way a judgment of non pros may come before this
court is on appeal from the judgment. This occurs when
the plaintiff has failed to move the case to trial, and aft-
er a long wait, the defendant moves for and is granted
judgment of non pros. *Kennedy v. Bulletin Company,*
237 Pa.Super. 66, 346 A.2d 343 (1975), is a good exam-
ple. There, "the [defendant] answered the [plaintiff's]
interrogatories in 1968, and by so doing, indicated a will-
ingness to try the case on the merits at that time. The
[plaintiff], however, took no action until December 6,
1973 [when she filed a certificate of readiness]." *Id.* at
71, 346 A.2d at 346. The defendant filed a petition for
rule to show cause why judgment of non pros should not
be entered, the lower court entered the judgment, and
the plaintiff appealed to this court.

A second way a judgment of non pros may come before this court is on appeal from an order denying a petition to open the judgment. There the plaintiff has not complied with an order. The order may have originated with the defendant, as where the defendant rules the plaintiff to file a complaint within 20 days or suffer judgment of non pros; or the order may have originated with the court, as where the court orders the plaintiff to answer interrogatories within a stated period or suffer judgment of non pros. In either situation, what happens is that the plaintiff does not comply with the order, judgment is entered, the plaintiff files a petition to open the judgment, the lower court denies the petition, and the plaintiff appeals to this court. *Thorn v. Clearfield Borough*, 420 Pa. 584, 218 A.2d 298 (1966) (failure to file a complaint), is one example; *Boyles v. Sullivan*, 230 Pa.Super. 453, 326 A.2d 440 (1973) (failure to answer interrogatories), is another.

Judge HOFFMAN states in his concurring opinion that we are to apply different rules, according to which way the judgment of non pros comes before us. If it comes before us in the first way—on appeal from the judgment—we are to look to see whether the defendant has suffered prejudice, but if in the second way—on appeal from denial of petition to open—we are not to concern ourselves with prejudice. The reason for this difference, he suggests, is that in the first way, "[p]rejudice is a prerequisite to securing a judgment of non pros . . . .", whereas in the second way, "the judgment of non pros was entered as a *sanction* . . . ." 244 Pa.Super. at ——, 366 A.2d at 928.

I am not persuaded that there are these two different rules. The essence of a sanction is that it is punishment. In considering whether to inflict punishment, one always asks what harm has been done, which is simply another way of saying, one asks what prejudice the other party has suffered. Not to ask this question would lead·to an

anomalous result. Suppose D-1 has obtained judgment of non pros after ruling P-1 to file a complaint. Further suppose that D-2 has obtained his judgment of non pros, because, after he has waited for years for P-2 to move the case to trial, he has petitioned for the judgment. Why should it be easier for D-1 to hold onto his judgment, because whether he has been prejudiced is immaterial? D-1 is no more meritorious than D-2; or, to state the matter conversely, P-1 is no more a wrongdoer than P-2 (he may be less a wrongdoer). D-1 and D-2 simply happen to be in different procedural situations, not because of any difference in merit but only because P-1 did not file a complaint, while P-2 did. Nothing should turn on such happenstance. *Cf. Gordon-Stuart Ltd. v. Allen Shops, Inc.*, 239 Pa.Super. 35, 361 A.2d 770 (1976) [1975] ("no viable distinction exists" between the two different sorts of judgment of non pros).

The true principle, I suggest, is that in any case involving a judgment of non pros, whatever the procedure that preceded the judgment, the decision whether to let the judgment stand should be made according to general principles of equity. This conclusion, moreover, is supported by the cases, when they are closely read. While it is true that cases such as *Thorn v. Clearfield Borough*, *supra*, and *Boyles v. Sullivan*, *supra*, do not say that prejudice is a relevant factor, neither do they say, as Judge Hoffman's opinion does, that "prejudice is not a relevant factor." They simply do not mention prejudice at all. However, the principle applied is that "[a] petition to open a judgment is an appeal to the equitable side of the court, and the petition must establish equitable considerations which convince the court that the parties could best be served by the striking of the judgment." *Thorn v. Clearfield Borough*, *supra* at 585, 218 A.2d at 298. In "establish[ing] equitable considerations," it is always necessary to ask what prejudice the other party has suffered. *Thorn*, in fact, is somewhat similar to the present case, for it involved an attorney whose ability to

perform his professional duties was diminished by poor health and consequent mental distress.

Accordingly, I think the majority has correctly looked to see if there is prejudice. My disagreement is with the majority's statement that it "cannot ignore the implicit prejudice visited upon the appellants" by opening the judgment. I do not know what "implicit prejudice" means. If it refers to delay, it is not convincing; delay generally helps a defendant. In any event, the lower court "note[d] that the [appellants] have not produced any evidence which would show that they have been prejudiced in any manner by this delay." In these circumstances, I would remand for further proceedings. If appellants can show prejudice, very well; but if they cannot, I think the balance of equitable considerations tips in appellees' favor—at least, I would find no abuse of discretion on the part of the lower court in so concluding —and I would allow the order granting the petition to open to stand.

PRICE, J., joins in this opinion.