508 A.2d 600

**Michele IOLE, Administratrix of the Estate of Michael Iole, Michele Iole, Frank Iole and Phiolmena Iole, His Wife**

v.

**WESTERN AUTO SUPPLY COMPANY, Summit and John Doe, Representing All Those Individual Corporations and Other Entities That Produced Manufactured, Designed, Constructed and/or Assembled and Sold/Or Distributed Wizard 2 Ton Capacity Jack Stands Model Number A–5030.**

Superior Court of Pennsylvania.

Argued Feb. 20, 1986.

Filed May 12, 1986.

John D. Hendricks, Pittsburgh, for appellants.

Frederick N. Egler, Jr., Pittsburgh, for appellees.

Before BROSKY, OLSZEWSKI and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from an order in the court below refusing to open or strike a judgment of non pros. We vacate.

On November 22, 1983, the plaintiffs filed a praecipe for summons in trespass and assumpsit against Western Auto Supply Company (hereinafter Western) and Summit, the seller and manufacturer, respectively, of a two-ton jack-stand which allegedly collapsed during use and resulted in the death of one Michael Iole.

By April 11, 1984, counsel for Western had entered his appearance and filed a praecipe with the prothonotary to issue a rule upon the plaintiffs to file a complaint within twenty days from the date of service or suffer a non pros. Receipt of the rule by counsel for the plaintiffs occurred on April 13. A praecipe for judgment of non pros was filed on June 5 and was followed by the entry thereof by the prothonotary for the plaintiffs' failure to file a complaint.

On June 22, counsel for the plaintiffs submitted a petition to open or strike the judgment. In the petition, the plaintiffs alleged that Western's counsel was informed of the ongoing negotiations with Summit to settle the case amicably. In order to accomplish this, the plaintiffs secured an extension until May 31 from counsel for Western. However, "counsel for Plaintiffs was under the understanding that the May 31, 1984 date would not be a final deadline, but an approximate date to review the status of settlement negotiations with Summit." Consequently, the plaintiffs contended, absent any prior notice from Western of its

intention to seek a non pros—as was the local custom, a complaint need not have been filed while negotiations with Summit were taking place. To hold otherwise, the plaintiffs urged, would result in a highly inequitable and harsh penalty being imposed upon the petitioners.[1]

On July 3, Western responded in the form of an answer and new matter. In the answer section, it admitted conversing with counsel for the plaintiffs with regard to the extension, that May 31 was agreed upon as the date certain for the extension, and that if any additional extension were needed counsel for the plaintiffs would "contact" defense counsel. All other allegations were denied or could not be responded to because the defendant was without sufficient knowledge to form a belief as to their truth or falsity.

In the new matter portion of the reply, the defendant averred that the plaintiffs' failure to advise it, as stated in a written communication from the plaintiffs to the defendant dated April 27, 1984, that they were in need of a further extension beyond May 31 rendered the securement of the judgment of non pros on June 5 proper.[2]

In the plaintiffs' reply to new matter, as herein pertinent, it was alleged that May 31 was not a "deadline" for the filing of the complaint. Rather, "the date was the time to determine the status of negotiations and review the situation." Thus, it was asserted, "Plaintiff's counsel was not required to seek a further extension or file a complaint prior to May 31, 1984."

 On petition of the defendant, the court below issued a rule on the plaintiffs to show cause why matters

---

1. Attached to the petition was a 49-page, 18-count complaint in trespass and assumpsit in support of the plaintiffs' claim that a meritorious cause of action existed against Western and Summit.

2. The letter referred to by the defendant was written by counsel for the plaintiffs to counsel for the defendant on the date stated and reads:

Dear Mr. Egler:

This is to confirm our telephone conversation of April 13, 1984 in which you graciously granted an extension to May 31, 1984 to file a complaint in this matter. As we agreed, if at that time I need a further extension I will so advise you.

should not proceed as required by Pa.R.Civ.P. 209. The rule was made returnable, "Sec. Leg. Sec. Reg." In accordance therewith, counsel for the plaintiffs was deposed on October 24, 1984, and in the course thereof gave his reasons for not acting timely in filing a complaint. Thereafter, upon a review of all the evidence, the court below concluded that the "plaintiffs ha[d] not excused their failure to timely file a complaint." This appeal [3] followed and questions the refusal of the court below to open or strike the judgment of non pros.[4]

The standards we look to in assessing the entry of a judgment of non pros, and its subsequent opening or affirmance, has been stated by this Court to be the following:

A petition to open a judgment is addressed to the equitable powers of the court. *Johnson v. Mulhall,* 230 Pa.Super. 183, 326 A.2d 439 (1974); *Matyas v. Albert Einstein Medical Center,* 225 Pa.Super. 230, 310 A.2d 301 (1973). Accordingly, our Supreme Court has stated that: "A request to open a judgment of non pros is by way of grace and not of right. Its grant or refusal is peculiarly a matter of the lower court's discretion. An appellate court may not reverse the lower court's ruling unless an abuse of discretion is clearly evident: *Brigham v. Elgin's of Phila.,* 406 Pa. 99, 176 A.2d 404 (1962)." *Mazer v. Sargent Electric Co.,* 407 Pa. 169, 171, 180 A.2d 63, 64 (1962). A court will not exercise its discretion and

**3.** Although the order appealed is interlocutory, Pa.R.App.P. 311(a)(1) permits the taking of such an appeal. See *Bottero v. Great Atlantic & Pacific Tea Co.,* 316 Pa.Super. 62, 462 A.2d 793 (1983); see also *Kukich v. Serbian Eastern Orthodox Church of Pittsburgh,* 415 Pa. 28, 202 A.2d 77 (1964). We wish to point out that we do not read *Erie Human Relations Commission v. Erie Insurance Exchange,* 304 Pa.Super. 172, 450 A.2d 157 (1982) to require otherwise, and limit that decision (i.e., exceptions to judgment of non pros treated as reconsideration motion and did not toll statute of limitations to permit appeal beyond 30-day appeal period) to the facts of the case.

**4.** Since the plaintiffs' petition was not directed to defects in the record, their petition should have been simply entitled petition to open. *Mazer v. Sargent Electric Co.,* 407 Pa. 169, 180 A.2d 63 (1962). Consequently, we will treat the petition as merely one to open. See, e.g., *Goldstein v. Graduate Hospital of University of Pa.,* 441 Pa. 179, 272 A.2d 472 (1971); *Mazer v. Sargent Electric Co.,* supra.

open a judgment of non pros unless three factors coalesce: (1) a petition to open the judgment must be promptly filed; (2) there must be a reasonable explanation or excuse for the default; and (3) facts constituting grounds for a cause of action must be alleged. *Goldstein v. Graduate Hospital of the U. of Pa.*, supra; *Thorn v. Clearfield Borough*, 420 Pa. 584, 278 A.2d 298 (1966); *White v. Alston*, 231 Pa.Super. 438, 331 A.2d 765 (1974); *Matyas v. Albert Einstein Medical Center*, supra.

*Lewis v. Reid*, 244 Pa.Super. 76, 80, 366 A.2d 923, 924 (1976), petition for allowance of appeal denied April 7, 1977. The only criterion in dispute is whether a reasonable excuse was proffered by the plaintiffs to avoid entry of the non pros.

We start our inquiry with a review of the deposition given by counsel for the plaintiffs. At the proceeding, counsel recalled how, after the summons were served upon Summit and Western, he was contacted in January of 1984 by one William Weiler. Mr. Weiler advised him that he would be "representing Summit and maybe Western Auto Supply; he wasn't sure at that time, and that he would send a letter to confirm it." In the same phone conversation, according to counsel for the plaintiffs, Weiler had stated that "they would like to try to work out a settlement", and if counsel would refrain from filing a complaint or any further pleadings to save on the expense of litigation it would be appreciated.

Mr. Weiler's belief that he would be representing both the manufacturer (Summit) and the distributor (Western) was confirmed by letter to counsel for the plaintiffs dated January 24, 1984. (See Deposition Exhibit "A") In the same letter, Mr. Weiler asked for medical authorization forms so that he could obtain the coroner's report and the ambulance report. Also, he asked that the plaintiffs' expert's report on the tests conducted on the jack-stand be forwarded to him along with permission to have his investigation company examine the item.

By letter of February 16, counsel for the plaintiffs sent the requested information and advised Mr. Weiler that he had made contact with Weiler's testing company to have photos taken of the instrument. This was followed-up with a letter dated March 8 to supply what data had not been previously received by Mr. Weiler (See Deposition Exhibit "C")

It was not until mid-April of 1984 that counsel for the plaintiffs learned that Fred Egler, Jr. had entered his appearance for Western. On April 13, counsel for plaintiffs received a rule to file a complaint as required by Pa.R. Civ.P. 1037(a). This prompted counsel to phone Attorney Egler. He stated he told him that "negotiations were going on to settle the case between the plaintiffs and the manufacturer, ... Summit, who [was] represented by Bill Weiler." Also, he claimed to have advised Egler that:

... if settlement was to be made, settlement would be made as to all parties [because this was a product liability suit], and that if [the plaintiffs] settle with Summit, that would settle the entire case, including with his [Egler's] client.

Because counsel for the plaintiffs had not heard from Weiler, in regard to the information forwarded to him, he requested that Egler give the plaintiffs an extension to file the complaint. After some haggling, May 31 was agreed upon. This was confirmed by letter of April 27. (See note 2, supra)

■ Albeit in the April 27 letter counsel for the plaintiffs wrote that if he needed an additional extension beyond the May 31 period he would so "advise" Attorney Egler, at the deposition he elaborated upon the purported intentions of counsel with regard to the extension date; to-wit:

... you know, at that time[, i.e., May 31,] we would take a look at it and see what position we were in, if we were close to settlement or if we were a million miles away from settlement or what the situation was.

Granted, at Points 9 & 10 of its Answer To Petition To Open Judgment, Western denied the aforementioned interpretation given by counsel for the plaintiffs to the conversation referred to. Nonetheless, since disputed issues of fact in the pleadings (petition and answer) triggered implementation of Rule 209, and, because the deposition of counsel for the plaintiffs was assessed by the court below solely upon a reading of the transcript, we see no justification against this Court drawing its own *reasonable* conclusions from the record before us. See *Bell v. Bell,* 326 Pa.Super. 237, 473 A.2d 1069 (1984) (POPOVICH, J.).

Counsel for the plaintiffs received notice on June 7 that a judgment of non pros had been entered on June 5. On June 14, counsel phoned Attorney Egler to inform him that he would be filing a petition to open judgment. This occurred on June 22.

We believe that it is relevant to note that by letter dated May 11, 1984, an associate of Attorney Egler requested that his client's expert be permitted to conduct non-destructive tests on the jack-stand in question. The letter concluded with the salutation that the writer would "await hearing" from counsel for the plaintiffs on this matter. Counsel responded in writing on May 26. He agreed to make the item available provided one of his representatives be allowed to be present during the testing. In counsel's closing remarks he asked that he be "advised" of whether these terms were acceptable to counsel for Western. No response ever came. Rather, a judgment of non pros was entered approximately eight (8) days after Attorney Egler should have received the letter through the mails,[5] see generally *Franklin Interiors, Inc. v. Browns Lanes, Inc.,* 227 Pa.Super. 252, 255–256 & n. 2, 323 A.2d 226, 228 & n. 2 (1974), and only five (5) days after the May 31 extension.

**5.** We are allowing two (2) days for the letter to clear the post office. This period is equal to the passage of time consumed by the mail carrier in delivering Western's rule to file a complaint by return receipt to the plaintiffs' counsel in April of 1984.

■ Our task, as always, in reviewing the discretion exercised by a lower court is not to substitute our judgment for that of the lower court but to determine if the lower court's action was manifestly unreasonable. *Saint Vladimir Ukrainian Orthodox Church v. Preferred Risk Mutual Insurance Co.,* 239 Pa.Super. 492, 362 A.2d 1052 (1976). However, our considerations in making this determination, in light of the tripartite test mentioned earlier, is to be tempered by our application of equitable principles, a tool utilized in weighing the propriety of rulings concerning default judgments. See *Toplovich v. Spitman,* 239 Pa.Super. 327, 361 A.2d 425 (1976). We find the same principles applicable here. See *Goldstein v. Graduate Hospital of University of Pa.,* 441 Pa. 179, 272 A.2d 472 (1971).

■ Our extensive review of the case law dealing with judgments of non pros, and whether they should be affirmed or vacated, leads us to conclude that, under the unique facts here, the plaintiffs are entitled to have the judgment vacated. We find support for our determination in the reasoning of this Court in *Holliday v. Foster,* 221 Pa.Super. 388, 292 A.2d 438 (1972).

In *Holliday,* we dealt with the question of whether the court below abused its discretion or committed an error of law in denying relief where the delay in filing a complaint occurred approximately five years after the service of the summons. Counsel for the plaintiffs offered as one of his reasons for the delay the fact that he was engaged in "negotiations with the insurance carrier of the defendant". In making our ruling that the judgment should be vacated, we made the following observations:

> The normal way of avoiding undue delay in the filing of a complaint, when an action is commenced by service of a summons, is Pa.R.C.P. 1037(a), 12 P.S. Appendix. The plaintiff is given notice, and if he fails to file a complaint within 20 days, the defendant by filing a praecipe can automatically obtain a judgment of non pros. The existence of that procedure does not limit the inherent power of the court to grant the remedy of non pros. Because of

the availability of Pa.R.C.P. 1037(a), however, the courts should limit their exercise of power as to failure to file a complaint to cases of rather extreme delay. All such appellate cases have entailed a delay much in excess of five years. Even more important in the instant case, the delay was satisfactorily explained without contradiction and there is nothing of record to show that "the delay has caused some prejudice to the adverse party, such as the death of or unexplained absence of material witnesses." *James Bros. Co. v. Union B. & T. Co., supra,* 432 Pa. at 132, 247 A.2d at 589.

221 Pa.Super. at 390–391, 292 A.2d at 439–440 (Footnotes omitted).

Instantly, as in *Holliday,* counsel for the plaintiffs was involved in on-going negotiations (there, with an insurance carrier of the defendant; here, with a co-defendant of Western's) to resolve the case without having to proceed to trial. As stated by counsel for the plaintiffs during his deposition, he informed Attorney Egler that, "There is no way that the manufacturer was going to settle with [him] when they could be dragged in under subrogation or indemnification." Thus, from the letter written by counsel for the plaintiffs on May 26, 1984, in response to Western's counsel's request to test the jack-stand, it is reasonable to infer that at least by that late date dialogue was continuing among the parties to seek an amicable solution to the dispute short of going to trial.

We have found no cases which would approve of the entry of the sanction imposed by the court below in light of the negotiations persisting in the case at bar. We cannot, in like fashion, lend our imprimatur to such a harsh result when weighed against no evidence that the defendant's ability to present factual information in the event of trial will be prejudiced. See *Lewis v. Reid,* supra; *Holliday v. Foster,* supra.

Order vacated. Jurisdiction is relinquished.