637 A.2d 1358

**Donald UHL & Janice Uhl, H/W**

**v.**

**C.H. SHOEMAKER & SON, INC., and Mr. Goodbuys of Penna. and Mr. Goodbuys, Inc., and Mr. Goodbuys Realty Corp.**

**Donald UHL & Janice Uhl, H/W**

**v.**

**ACE LUMBER AND MILLWORK CO., INC., a/k/a Ace Lumber and Jad Enterprises, Inc., t/a Ace Lumber and Millwork Co. and Alm Corp. and Peter Lumber Company a/k/a Peter Lumber Company, Inc.**

**Appeal of C.H. SHOEMAKER & SON, INC.**

Superior Court of Pennsylvania.

Argued Sept. 30, 1993.

Filed March 1, 1994.

Robert B. Goodyear, Philadelphia, for appellant.

John F. Beggin, Philadelphia, for Uhl, appellees.

Before ROWLEY, President Judge, and OLSZEWSKI and BECK, JJ.

OLSZEWSKI, Judge.

C.H. Shoemaker & Son, Inc. ("Shoemaker") appeals from the lower court's order denying its motion for an independent medical examination ("IME"). Shoemaker argues that the trial court abused its discretion in finding that Shoemaker failed to show good cause for the IME. We affirm.

On February 3, 1987, Donald and Janice Uhl filed a complaint against Shoemaker, alleging that Donald sustained serious injuries to his right arm after falling from a substandard scaffold owned by Shoemaker.

On March 12, 1987, the Uhls sent Shoemaker a set of interrogatories, including a request that Shoemaker name any

expert witness it expected to call at trial. The Uhls also sent Shoemaker a second set of interrogatories on March 13th, again requesting the names of any expert Shoemaker expected to call at trial. Shoemaker did not respond and, consequently, the Uhls filed a motion to compel discovery which was granted on September 25th. On January 11, 1988, the trial court sanctioned Shoemaker for its continued and unexplained failure to comply with the September 25th order and cautioned Shoemaker that continued failure to comply could lead to harsher sanctions. On the same day, Shoemaker filed responses to the Uhls' first set of interrogatories. Shoemaker's answers, however, were inadequate. On June 24, 1988, the trial court sanctioned Shoemaker a second time for failing to comply with an April 22nd order compelling discovery.

On March 12, 1990, the Uhls filed a motion to strike Shoemaker's non-responsive answers to interrogatories and demanded that Shoemaker specifically identify its experts for trial. On the same day, the lower court entered an order directing Shoemaker to serve discrete answers to the Uhls' interrogatories concerning expert testimony within 180 days. The 180–day period expired without Shoemaker filing an answer.

On August 7, 1991, this case appeared on the trial list and all counsel agreed to a continuance so final trial preparation could be completed and the videotape testimony of Dr. Collier, Donald Uhl's treating orthopedic surgeon, could be taken.

On November 13, 1991, the Uhls took a videotape deposition of Dr. Collier, who testified as to the non-union of one of Mr. Uhl's fractures. Although Shoemaker's counsel was present at the deposition, he did not request an IME of Mr. Uhl.

The case was scheduled to return to the trial list on March 30, 1992. On April 1, 1992, however, Shoemaker requested an IME of Mr. Uhl. The lower court offered to allow Shoemaker to conduct the IME if it would reimburse the Uhls for the cost of videotaping Dr. Collier's testimony. Shoemaker refused the Court's offer. Thereafter, the trial court denied Shoemaker's motion for an IME on the grounds that: (1) Shoemaker

had not acted with due diligence and, (2) Shoemaker had failed to comply with the discovery orders of January 11, 1988; June 24, 1988; and March 12, 1990. On May 6, 1992, Shoemaker filed a motion for reconsideration which was denied. This appeal followed.

Shoemaker contends that the trial court erred in denying its motion to compel an IME. Specifically, Shoemaker argues that the trial court abused its discretion in ruling that Shoemaker had failed to show good cause for the IME. We disagree. Pennsylvania Rule of Civil Procedure 4010(a) authorizes a trial court to order an IME of a party only when good cause is shown. The purpose of requiring good cause is to ensure that a party's privacy is not unduly invaded. *See State Farm Ins. Co. v. Swantner,* 406 Pa.Super. 235, 594 A.2d 316 (1991); *Explanatory Note,* Pa.R.C.P. 238, 42 Pa.C.S.A. Whether good cause exists is a determination within the discretion of the trial court. *John M. v. Paula T.,* 524 Pa. 306, 571 A.2d 1380 (1990). Absent an abuse of discretion, a reviewing court will not reverse the trial court's determination that good cause does not exist. *Id.* Furthermore, our task in reviewing the discretion exercised by the lower court is not to substitute our judgment for that of the lower court, but to determine if the lower court's action was manifestly unreasonable. *Iole v. Western Auto Supply,* 352 Pa.Super. 528, 508 A.2d 600 (1986). Lastly, "when the [trial] court has come to a conclusion by the exercise of discretion, the party complaining of it on appeal has a heavy burden; it is not sufficient to persuade the appellate court that it might have reached a different conclusion." *In re Estate of Mackarus,* 431 Pa. 585, 596, 246 A.2d 661, 666 (1968). We find that the record supports the lower court's decision.

First, Shoemaker has not acted diligently. The Rules of Civil Procedure do not establish a timetable for discovery; rather, "it is the job of the trial court to oversee discovery between the parties and therefore, it is within that court's discretion to determine the appropriate measures necessary to insure the adequate and *prompt* discovery of matters allowed

by our rules." *Lombardo v. DeMarco*, 350 Pa.Super. 490, 495–96, 504 A.2d 1256, 1258–59 (1985) (emphasis added); *see also Wertz v. Kephart*, 374 Pa.Super. 274, 542 A.2d 1019, *alloc. denied*, 520 Pa. 619, 554 A.2d 511 (1988). The lower court denied Shoemaker's motion on the grounds that Shoemaker had not acted promptly. We agree. Although this case was commenced over five years ago, Shoemaker did not file its motion until shortly before this case was to arrive on the trial list. Furthermore, Shoemaker did not file its motion until five months after the Uhls had already videotaped the trial testimony of their expert.

Second, granting Shoemaker's motion would prejudice the Uhls. The Uhls videotaped their expert for trial with the expectation that Shoemaker was not going to call an orthopedic surgeon as an expert witness. Earlier in this litigation, the Uhls sought to discover through interrogatories whether Shoemaker would use expert witnesses. Shoemaker either refused to answer those interrogatories or did not answer them adequately. The Uhls then obtained court orders directing Shoemaker to comply with their discovery requests. Shoemaker, however, refused to comply with these court orders as well. Consequently, the Uhls were forced to videotape their expert's trial testimony without the benefit of knowing whether Shoemaker would request an IME. If an IME were to occur now, the Uhls in all probability would have to re-videotape the trial testimony of their expert at substantial cost. The original videotaping of the Uhls' expert cost $3,000. We find that it would be unfair to force the Uhls to incur this cost again. Furthermore, the trial court noted that the delay caused by granting Shoemaker's motion would be compounded by the Uhls' need to re-videotape their expert after receiving the results of the IME. This law suit has been pending for over five years. We perceive no reason to delay this lawsuit any further for Shoemaker's benefit when Shoemaker itself has not acted diligently.

Shoemaker contends that it did not realize that an IME was necessary until two months before its motion and, therefore, did not sleep on its rights. Shoemaker claims that it was

initially under the impression that Mr. Uhl would not request damages for permanent disability since Mr. Uhl had returned to work for a period of time after his accident. This belief was not dispelled, according to Shoemaker, until it received Uhl's vocational report, which stated that Mr. Uhl was entitled to damages for permanent disability. Shoemaker argues that, since it did not receive this report until two months before the case was re-listed for trial, its eleventh-hour motion is not the result of lack of diligence. We find this argument meritless.

First, Shoemaker offers no excuse for delaying its motion for two months *after* learning that an IME was necessary. This lack of diligence was inappropriate considering that Shoemaker knew the case was scheduled to return to the trial list in two months and had been pending for over five years. Second, Mr. Uhl's treating physician testified during his deposition that Mr. Uhl had been permanently disabled by his accident. R.R. at 90–92. This deposition was videotaped three months before Shoemaker received Mr. Uhl's vocational report. Shoemaker clearly should have realized at that point that Mr. Uhl might claim damages for permanent disability. Third, Shoemaker's right to obtain an IME was not in any way dependent upon whether Mr. Uhl might make a claim of permanent disability. Shoemaker could have obtained an IME of Mr. Uhl even if Mr. Uhl was only presenting a claim for temporary disability. Shoemaker, however, chose not to exercise its right for five years. The burden of that decision should be placed upon Shoemaker and not the Uhls.

Order affirmed.

BECK, J., files a Dissenting Opinion.

BECK, Judge, Dissenting.

I dissent.

Appellant, C.H. Shoemaker and Son, Inc. appeals from an order denying its motion to compel appellee, Donald Uhl, to submit to a medical examination. The order was entered following the trial court's finding that appellant failed to show "good cause" in its motion to compel an independent medical

examination pursuant to Pennsylvania Rule of Civil Procedure 4010(a). For the reasons stated herein, I would reverse.

The factual and procedural history of this case are summarized as follows. On February 3, 1987, Mr. Uhl filed a complaint against C.H. Shoemaker and Son, Inc. ("Shoemaker"). In Mr. Uhl's complaint, he contends that on October 18, 1985 he sustained serious injuries to his left, non-dominant arm after falling from an alleged substandard scaffold which was owned and erected by Shoemaker.

On November 13, 1991, the videotape deposition of Mr. Uhl's treating orthopedic surgeon, Dr. Collier, was taken. At that time, Dr. Collier testified that Mr. Uhl may be unable to return to iron work due to the nonunion of his fracture and the subsequent traction to his ulnar nerve. Dr. Collier was particularly concerned with Mr. Uhl's safety while working off the ground.

On February 26, 1992, Bernard W. Albert, Ed.D. submitted a vocational evaluation report at the request of Mr. Uhl's attorney. In the report, Dr. Albert stated that after Mr. Uhl's injury, he returned to his position as an iron worker and part-time police officer. In November 1990, Mr. Uhl left the iron work industry since he allegedly discovered that "some aspects of iron work were, at best, difficult, if not impossible because of the limitations imposed by his impaired left, non-dominant upper extremity." According to Dr. Albert, Mr. Uhl subsequently began working for the Southeastern Pennsylvania Transportation Authority as a full-time police officer.

Dr. Albert opined that Mr. Uhl has sustained a loss in earning capacity of approximately $22,300 annually. He further explained that if Mr. Uhl's circumstances remain unchanged, Mr. Uhl's wage rate would represent his annual loss in earning capacity for Mr. Uhl's thirty-two remaining occupational years. Accordingly, Dr. Albert concluded that Mr. Uhl would have a lifetime loss in earning capacity of $713,600.00.

On March 20, 1992, after Mr. Uhl refused to submit to an independent medical examination, Shoemaker filed a motion to compel Mr. Uhl to appear at the offices of Dr. Ronald Greene

on April 13 or 14 for a medical examination. After hearing oral arguments, the trial court stated that Shoemaker would be permitted to conduct a medical examination of Mr. Uhl on the condition that Shoemaker reimburse Mr. Uhl for his reasonable expenses associated with the videotaped testimony of Dr. Collier. Subsequent to Shoemaker's refusal, the trial court denied their motion for an independent medical examination. Shoemaker's motion for reconsideration was denied. This appeal followed.

Appellant contends that the trial court erred in refusing to order appellee to submit to an independent medical examination. Pennsylvania Rule of Civil Procedure 4010(a) provides as follows:

> When the mental or physical condition (including blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending *may* order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for *good cause shown* and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made.

Pa.R.C.P. 4010(a) (Emphasis added).

The exercise of the power of a trial court to require a party to submit to a medical examination is a matter within the trial court's discretion. *Myers v. Travelers Ins. Co.*, 353 Pa. 523, 46 A.2d 224 (1946). However, such discretion should be exercised in light of the purpose of the Pennsylvania Rules of Civil Procedure relating to discovery. The purpose of the discovery rules is to permit the full and free acquisition of relevant pretrial information which will substantially aid in the preparation of the case so that the matter may be disposed of on its merits rather than on considerations of surprise. *McCracken v. Doklan*, 14 D. & C.2d 694 (1958).

In order to protect against an undue invasion of the privacy rights of individuals whose mental or physical condition is in controversy, Pennsylvania Rule of Civil Procedure 4010(a) conditions the granting of a motion for a medical examination on
several requirements. Goodrich Amram, § 4010(a):1, at 341. *See also State Farm Ins. Cos. v. Swantner,* 406 Pa.Super. 235, 594 A.2d 316 (1991). In particular, Rule 4010 requires that the moving party establish that good cause exists [1] to support a court order for such an examination. *John M. v. Paula T.,* 524 Pa. 306, 571 A.2d 1380 (1990). Accordingly, the trial court must decide whether the party requesting an examination has adequately demonstrated the existence of "good cause."

On the other hand, Rule 4010 does not place any limitation on the stage of the action at which the application for a medical examination may be filed. Goodrich Amram, § 4010(a):5, at 344. If the examination is requested at any time sufficiently before trial to enable the examination to be completed without delaying the trial, the examination should be considered timely. *Id.* A court may even permit an examination during the trial itself. *Id.*

In applying the above stated rules to the instant case, I would find that the trial court abused its discretion in refusing to order Mr. Uhl to submit to a physical examination.[2] It is

1. "Under the comparable federal rule from which Rule 4010 is drawn the requirement of good cause is not met by mere conclusory allegations of the pleadings or by mere relevance of the physical or mental condition to the case, but rather, requires an affirmative showing by the moving party that good cause exists for ordering the examination." Goodrich Amram, 4010(a):10, at 348. *See also Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964).

2. In addition, I would find that the trial court abused its discretion in requiring appellant to reimburse appellee for all reasonable expenses associated with the videotaped testimony of Dr. Collier. Upon good cause shown, a moving party is entitled to an order directing a party to appear for a physical examination. This right should not be impaired by the imposition of unreasonable conditions. Appellee changed the landscape of the proceeding by asserting injuries far beyond those originally contemplated by the parties. Appellee has created the condition which escalated the claim for injuries. Therefore, I would conclude the court abused its discretion in assessing charges against appellant for the video of Dr. Collier.

evident that the nature of Mr. Uhl's claim dramatically changed shortly before trial. Throughout the history of this case, appellee presented this case as one involving only temporary disability. Following the accident, Mr. Uhl resumed his position as an iron worker between 1985 and 1990. Consequently, appellant did not request that Mr. Uhl undergo an independent medical examination, since it appeared to appellant that Mr. Uhl had sufficiently recovered from his injuries.

Approximately five years after Mr. Uhl had filed his complaint, Dr. Collier opined that Mr. Uhl may be unable to return to iron work due to his alleged residual symptoms. Subsequently, appellant received a report prepared by Dr. Albert stating that Mr. Uhl was unable to remain in the iron working field. Dr. Albert asserted that Mr. Uhl would suffer from a loss of future earnings in excess of $700,000. At this point, appellant became aware for the first time that appellee intended to present a substantial claim for permanent loss of earning capacity.

Based on the foregoing facts and circumstances, I find that appellant has clearly established good cause for the medical examination.

In addition, appellant's request for the examination was timely. Appellant requested the examination at a time which would enable the examination to be completed without significantly delaying the trial. Shoemaker arranged for appellee to be examined by an orthopedic specialist on April 13 or 14 of 1992. Although the matter was due to return to the trial list on March 30, 1992, the case was still several weeks from going to trial.

I conclude that the trial court abused its discretion in conditioning the approval of the medical exam on appellant's payment for Dr. Collier's videotaped deposition, and in ultimately denying appellant's motion to compel Mr. Uhl to submit to a physical examination.