# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

## JOAN LOREVA KRETH v. TIMOTHY KERWIN KRETH

**A Rule 10 Appeal from the Circuit Court for Shelby County**
**No. CT-006726-00     The Honorable D'Army Bailey, Judge**

---

**No. W2002-00983-COA-R10-CV - Filed May 20, 2002**

---

This case is before the Court on application for extraordinary appeal pursuant to Tenn. R. App. P. 10. The applicant-father filed a petition to modify the final decree of divorce concerning his child support obligation, because the minor child was currently living with him. Mother filed an answer stating that the child should not be living with father and that father was violating the provisions of the permanent parenting plan entered at the time of the divorce. Subsequently, Mother filed, among other things, a "Motion for Psychological Evaluation of the Parties and Their Child." The trial court granted the motion and ordered such psychological evaluations as requested. Father has filed an application for a Rule 10 appeal. We grant the application and reverse the order of the trial court and remand the case for further proceedings.

**Tenn. R. App. P. 10; Extraordinary Appeal; Judgment of the Circuit Court Reversed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion and order of the court, in which DAVID R. FARMER, J. joined.

David E. Caywood, Memphis, For Appellant, Timothy Kerwin Kreth

Amy J. Amundsen, Memphis, For Appellee, Joan Loreva Kreth

### OPINION

Plaintiff, Joan Loreva Kreth (Mother), and Defendant, Timothy Kerwin Kreth (Father), were divorced by final decree entered on June 12, 2001, which included a Permanent Parenting Plan providing for the minor child to reside one week with Mother and one week with Father. The decree also provided for Father to pay $3,500.00 per month child support for said child. On December 3, 2001, Father filed a petition to modify the Final Decree of Divorce, seeking primarily to be relieved of the child support obligation because the minor child was living with him. Father's petition states that following the divorce, both parties reconciled to the extent that Mother moved into Father's residence and began cohabiting with him in early September 2001. The parties continued this

arrangement and began plans for a remarriage. The petition further avers that in October, the parties took a family vacation along with the minor child and that upon returning from the vacation, Mother moved out of Father's resident and on November 3, 2001, married a person named Jason Cromwell, who she allegedly had a relationship with prior to the divorce. The petition seeks, among other things, that Father be relieved of the obligation to pay cash child support and that Mother be required to pay child support to Father in addition to insurance premiums and other obligations which Father is currently responsible for.

Mother filed an answer to the petition virtually admitting the allegations thereof with explanations for the reasons therefor and denies that Father should be the primary residential parent and that he is obstructing the parenting time. The answer further avers that it is in the best interest of the child to live with Mother pursuant to the Permanent Parenting Plan and "that parents and child should immediately enroll in family counseling."

Subsequently, Mother filed, among other things, a "Motion for Counseling and Motion to Suspend Proceedings Pending Family Therapy and/or in the Alternative, Motion for Mediation Before Any Hearings." The motion alleges that Father has not followed the Permanent Parenting Plan, has not allowed or encouraged the minor to be with his mother, and that due to the level of emotions involved the mother, father, and son should be required to participate in family therapy. The motion also seeks suspension of the proceedings for three months to allow time for participation in the therapy. In support of the answer, Mother filed an affidavit alleging various wrongful acts on the part of Father. Father filed a response to Mother's motion setting out his version of the facts as they related to the attempted rehabilitation and the lack of success, and further responded to Mother's affidavit by denying the acts alleged against him and alleging various wrongful acts on the part of Mother. Although the allegations made by both parties could be material when this matter is heard in the trial court, they are not material for the issue before this Court concerning the order for psychological evaluation, and therefore we see no need to detail them here.

The trial court granted Mother's motion, stating in pertinent part:

> 1. The Motion for Psychological Evaluation is well taken as the court believes it will benefit from hearing from a well respected psychologist as to what parenting time and plan is in the son's best interest.
>
> 2. The court hereby orders that the parties and son be evaluated by Dr. Ciocca. The parties shall cooperate and sign all necessary releases and after his report is complete, the court will set this cause for an expedited hearing on the Petition to Modify Permanent Parenting Plan.

The trial court, by its order, is seeking "what parenting time and plan is in the son's best interest."

Tenn. R. Civ. P. 35.01 provides:

> **Order for Examination**.  When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the persons in his custody or legal control.  The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

In ***Odom v. Odom,*** No. M1999-02811-COA-R3-CV, 2001 WL 154376 (Dec. 5, 2001)*,* this Court in considering the use of psychological evaluation in domestic cases stated:

> Prior to the adoption of the Tennessee Rules of Civil Procedure, the Tennessee Supreme Court recognized the existence of a common-law power of courts to compel litigants to submit to physical examinations.  *Williams v. Chattanooga Iron Works*, 131 Tenn. 683, 691, 176 S.W. 1031, 1033-34 (1915). However, the Court recognized that the courts should exercise this power "with great restraint and with careful attention to the rights of the plaintiff." Accordingly, the Court held that plaintiffs should not be required to undergo a physical examination unless the party seeking the examination has demonstrated "that it is necessary in order that justice may be done." *Williams v. Chattanooga Iron Works*, 131 Tenn. at 694-95, 176 S.W. at 1034; *see also Union Pacific Ry. v. Botsford*, 141 U.S. 250, 259, 11 S. Ct. 1000, 1004 (1891) (Brewer, J., dissenting) (stating that truth and justice are more sacred than any personal consideration).
>
> With the advent in 1971 of the Tennessee Rules of Civil Procedure, Tennessee continued the common-law rule in Tenn. R. Civ. P. 35 which, then and now, is patterned after Fed. R. Civ. P. 35.[1] Tenn. R. Civ. P. 35.01 contains no limitation on the actions to which it applies; therefore it is available in any pending civil proceeding to which the Tennessee Rules of Civil Procedure apply.  Few precedents

---

[1]Decisions of the federal courts construing analogous federal rules of procedure can provide helpful guidance in interpreting our own rules.  *Frazier v. East Tenn. Baptist Hosp.*, 55 S.W.3d 925, 928 (Tenn. 2001); *Byrd v. Hall*, 847 S.W.2d 208, 211 n. 2 (Tenn. 1993); *Pacific Eastern Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946, 952 n.7 (Tenn. Ct. App. 1995).

construing Tenn. R. Civ. P. 35 exist because physical and mental examinations of parties or persons in the custody of a party are usually done by agreement without the intervention of the courts. 4 Nancy F. MacLean, *Tennessee Practice* § 35:2 (3d ed. 2000). In fact, commentators generally attribute the ease of these agreements to the existence of Rule 35. 8A Charles A. Wright, et al., *Federal Practice and Procedure* § 2234, at 474 (2d ed. 1994) ("*Federal Practice and Procedure*").

Any type of physical or mental examination entails an invasion of privacy. *Lombardo v. Holdridge*, 491 A.2d 1125, 1126 (Conn. Super. Ct. 1985); *Russenberger v. Russenberger*, 623 So. 2d 1244, 1245 (Fla. Dist. Ct. App. 1993); *Uhl v. C.H. Shoemaker & Son, Inc.*, 637 A.2d 1358, 1362-63 (Pa. Super. Ct. 1994). Accordingly, rules like Tenn. R. Civ. P. 35 balance the interests of personal privacy with the interest of truth and justice. *Lowe v. Philadelphia Newspapers, Inc.*, 101 F.R.D. 296, 298 (E.D. Pa. 1983); *Acocella v. Montauk Oil Transp. Corp.*, 614 F. Supp. 1437, 1439 (S.D.N.Y. 1985); *Avila v. Superior Court in and for County of Maricopa*, 816 P.2d 946, 948-49 (Ariz. Ct. App. 1991).

To invoke Tenn. R. Civ. P. 35.01 successfully, a moving party must establish two things. First, in the language of the rule, the moving party must establish that the mental or physical condition of a party or a person in the custody of a party is "in controversy." Second, the moving party must establish that "good cause" exists for the physical or mental examination. Rather than being mere formalities, the "in controversy" and "good cause" requirements distinguish Tenn. R. Civ. P. 35 from the other discovery rules. No other rule governing pre-trial discovery contains these requirements.

In light of these two requirements, a party seeking a Tenn. R. Civ. P. 35 order must establish more than that the physical or mental examination might lead to relevant information. *Guilford Nat'l Bank v. Southern Ry.*, 297 F.2d 921, 924 (4th Cir. 1962). It must also establish need. 4A James W. Moore, et. al., *Moore's Federal Practice and Procedure* ¶ 35.03[5] (2d ed. 1996). Explaining the significance of the "in controversy" and "good cause" requirements, the United States Supreme Court has noted:

> They are not met by mere conclusory allegations of the pleadings – nor by mere relevance to the case – but require an affirmative showing by the movant that

-4-

> each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination. Obviously, what may be good cause for one type of examination may not be so for another. The ability of the movant to obtain the desired information by other means is also relevant.

> *Schlagenhauf v. Holder*, 379 U.S. 104, 118, 85 S. Ct. 234, 242-43 (1964).

We first note that as to placing the physical or mental condition of the parties in controversy, there is nothing in the record to indicate that there is any controversy concerning the mental condition of either the mother, father, or the minor child.

It also appears that there is nothing in the record to satisfy the good cause requirement of Rule 35.01 which places the burden on the mother that the examination is needed. There is no indication that any other discovery techniques have been utilized by the parties.

Under these circumstances and at this stage of the proceedings, we find that the trial court's order for psychological evaluation at this time is premature, and Mother's motion should not have been granted.

Accordingly, we grant the application for extraordinary appeal pursuant to Tenn. R. App. P. 10 and reverse the order of the trial court for psychological evaluation of the parties. The case is remanded to the trial court for such further proceedings as may be necessary to resolve the issues between the parties. Costs of this appeal are assessed against the appellee, Joan Loreva Kreth.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.