## Ward v. General Motors Corporation

*Raymond J. Takiff*, for plaintiff.
*George J. Lavin, Jr.*, for defendants.

STOUT, *J.*, November 19, 1978—Plaintiff, Joseph Edward Ward, filed a complaint in trespass against General Motors Corporation in September, 1975. It alleged that on September 14, 1973, plaintiff was operating a 1972 Chevrolet pickup truck which became caught in crosswinds causing a "fishtailing" of the vehicle and causing plaintiff to lose temporary control and strike another vehicle. Among other things, plaintiff alleged negligent design of the automobile, failure to design a vehicle safe and adequate for the intended use, manufacturing a vehicle which did not meet safety regulations, failure to warn of dangers which defendant knew or should have known existed, designing, manufacturing and selling a vehicle which defendant knew or should have known was inherently

unsafe and therefore defective, failure to observe industry standards, violation of trade usages, violation of section 402(A) of the Restatement, Torts, failure to comply with applicable laws and ordinances, and negligence as a matter of law.

On May 16, 1976, defendant served on plaintiff supplemental interrogatories which sought to ascertain the precise nature of the defects alleged to be at issue. Included among them was interrogatory no. 59.

On July 8, 1976, plaintiff's counsel requested an extension of time to respond to the supplemental interrogatories.

On October 19, 1976, plaintiff's counsel requested a further extension of 30 days within which to file answers.

On November 15, 1976, plaintiff's counsel requested and received a 40-day extension of time.

On December 28, 1976, defendant received certain purported answers which it describes as "evasive and incomplete." As a result, defendant filed a motion to compel more specific answers to interrogatories. Defendant delayed filing this motion until February 23, 1977, as a result of two requests for delay from plaintiff's counsel.

On March 3, 1977, Honorable Eugene Gelfand entered an order directing plaintiff to "file full and complete answers to defendant's supplemental interrogatories 40, 44, 45, 48, 49, 50, 51, 52, 53, 58, 59, 60, 91, 92 and 96 within 30 days or suffer Judgment of Non Pros."

On April 1, 1977, plaintiff's counsel requested a 30-day extension to comply with Judge Gelfand's order. Defendant's attorney denied the 30-day extension but granted an extension until 5 p.m., April 18.

On April 19, 1977, defendant received from plaintiff "More Specific Answers."

On April 25, 1977, following the "More Specific Answers," defendant forwarded additional interrogatories to plaintiff asking, among other things, whether the defects were of design or manufacture in the area of the front suspension, brakes, tires, aerodynamics, or some other area of the automobile. These interrogatories also sought the name and address of the individual who would testify in support of the answers to these interrogatories.

Plaintiff's counsel requested five extensions of time to answer these, the last request being on March 20, 1978, at which time defendant asked for "an indefinite extension of time while we obtain the answers to the Interrogatories which are complete and meaningful."

On April 10, 1978, plaintiff gave a one-paragraph response to these interrogatories.

On July 13, 1978, defendant addressed a third set of interrogatories to plaintiff seeking the names and addresses of witnesses who would testify in support of plaintiff's claim on the liability. Uninformative answers were given to those questions.

Finally, in an attempt to determine whether plaintiff had a viable theory and whether or not plaintiff had any facts whatsoever with which to support his claim, defendant filed a request for admissions upon plaintiff in which he requested seven admissions that neither the motor vehicle nor its front suspension system, rear suspension system, steering system, braking system, tires or aerodynamics was defective in design, manufacture, assembly, fabrication or otherwise when it left the possession of General Motors Corporation.

To this request for admissions, plaintiff replied: "A. 1 through 7. Plaintiff is unable to admit or deny the defendant's request for admissions at the present time since the matters contained therein are the subject of intense and continuing discovery presently being conducted by plaintiff."

Defendant filed a motion for sanctions seeking dismissal of the complaint with prejudice. Plaintiff filed an answer. In the answer, he admits that he does not point to a particular component as such and states that the thrust and gravaman of the complaint are that "the design, manufacture and sale of this particular vehicle was inherently unsafe by virtue of its whole." Moreover, plaintiff answered that this was a res ipsa loquitor case and that he had no burden of proof under the law.

Even though Pa.R.C.P. 4019 provides that the court may impose an appropriate sanction if a party wilfully fails to file sufficient answers to written interrogatories, it does not provide a means by which a moving party may test the sufficiency of the answer to an interrogatory. The purpose of interrogatories, however, is to enable a party to prepare for trial, to narrow the issues, to aid in the determination of what evidence will be needed at trial and to reduce the possibility of surprise at that time.

The facts of this case present a three-part question: Were the answers to the questioned interrogatories sufficient; if not, was the failure to file a sufficient answer wilful; and, if wilful, what is the appropriate sanction?

Projecting these answers against the background of purpose of interrogatories, they clearly are insufficient. Interrogatory 59 read: "Identify

specifically any component of the vehicle which you contend was not in good mechanical condition and state and describe specifically and in detail the particular defect or abnormality upon which you base your contention that such component was not in good mechanical condition." The answer: "59. N/A."

After Judge Gelfand's order granting defendant's motion to compel more specific answers to interrogatories, plaintiff answered as follows: "59. To be as specific as possible, Plaintiff herein states that he is not an engineer. It does appear to Plaintiff, however, that the whole design was such as to make the vehicle defective. The particular defect was in manufacturing a vehicle which when caught in a cross wind, as this vehicle did, would fish tail causing the operator to lose control."

Defendant then addressed seven supplemental interrogatories regarding the "More Specific Answers" and asked that plaintiff state whether the defect was in the front suspension, rear suspension, steering system, brakes, tires, aerodynamics, or some other area of the automobile not mentioned in the preceding interrogatories.

Plaintiff answered: "1 through 7. Plaintiff states once again that he is not an engineer. Plaintiff reiterates that it does appear however, that the whole design was such as to make the vehicle defective. The particular defect was in manufacturing a vehicle in which when caught in a cross wind, as this vehicle did, would fish tail causing the operator to lose control."

The questions and answers as to expert witnesses were: "Q. 1. What is the name and address of the expert witness who will testify in support of plain-

tiff's claim on the liability issue? A. 1. At the present time, plaintiff is unable to supply this information. It should, however, be noted that it is plaintiff's theory that this type accident raises a 'res ipsa loquitor' type case and that it is not the plaintiff's burden to show liability but rather defendant's burden to show the absence thereof. As soon, however, as the names and addresses of expert witnesses are fully known to plaintiff they will be made know to defense with an exchange of reports. Q. 2. Will plaintiff produce more than one expert witness on the liability issue? If so, set forth the names and addresses of all such witnesses. A. 2. See above."

It is clear that the answer to question 59 in no way aids defendant in preparation for trial, narrows the issues or aids in the determination of what evidence will be needed for trial. Neither does it reduce the possibility of surprise at that time. Long v. C.M.C. Equipment Rental, Inc., 70 D. & C. 2d 403 (1975) has instructed that the factual contentions as to defects in design, manufacture, etc., upon which litigation is founded should not be reserved for trial surprise and should be disclosed by appropriate answer to an interrogatory making such inquiry. It also instructs that an inquiry as to the experts plaintiff intends to call is an appropriate subject for inquiry.

Considering the inordinate amount of time, some two and one-half years, in which plaintiff has not identified any component or system of the vehicle as defective, considering the order issued by Judge Gelfand over a year and a half ago, on March 3, 1977, directing plaintiff to file more specific answers, and considering plaintiff's failure on two occasions thereafter to allege any particular defect

simply because he "is not an engineer," the conclusion is inescapable that plaintiff's failure to file sufficient answers is wilful.

Few people are engineers. It would be a strange law which required only those plaintiffs who are to state the defect upon which they relied. Plaintiff apparently has never sought the aid of an engineer to help him in determining the claimed defect nor has he done what most any layman who drives a car can do, that is, state whether the defect is in the tires as opposed to the brakes, steering system or whatever. This is not a case of the inability to determine the defect despite a good faith effort. This is a case of no effort at all. The excuse that plaintiff is "not an engineer" is not an adequate reason for failure to answer. It does not negative wilfulness. Compare acceptable excuses in Anderson v. Nosser, 438 F. 2d 183 (5th Cir. 1971) (good faith effort was made but time was too short for full compliance), and Dorsey v. Academy Moving & Storage, Inc., 423 F. 2d 858 (5th Cir. 1970) (illness and airline strike prevented compliance), with unacceptable excuses in Dodson v. Evans, 204 A. 2d 388 (D.C. App. 1964) (plaintiff, who was an attorney, failed to understand the character of answers required), and Lewis v. Reid, 244 Pa. Superior Ct. 76, 366 A. 2d 923 (1976) (severe domestic problems cited as excuse for failure to file answers to interrogatories).

Even though five years have elapsed since the accident, plaintiff offers no excuse at all for not knowing the names and addresses of his expert witnesses.

In these circumstances, even though the sanction is harsh, there is no alternative but to enter a judgment of non pros under Pa.R.C.P. 4019(c)(3). Compare Triolo v. Philadelphia Coca Cola Bottling

Co., 440 Pa. 164, 270 A. 2d 620 (1970); Isenberger v. Schumann, 34 D. & C. 2d 315, aff'd 415 Pa. 217, 203 A. 2d 136 (1964); Calderaio v. Ross, 395 Pa. 196, 150 A. 2d 110 (1959); Denton v. Mr. Swiss of Missouri, Inc., 564 F. 2d 236 (8th Cir. 1977), applying F.R.C.P. 37(b)(2); and Garofalo v. General Motors Corp., 103 Ill. App. 2d 389, 243 N.E. 2d 691 (1968). See also Annotation: Dismissal of State Court Action for Failure or Refusal of Plaintiff to Answer Written Interrogatories, 56 A.L.R. 3d 1109.