J-A15020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BECRETT, L.L.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| R & H RESOURCES, INC.; JOSEPH M. | : | No. 1460 MDA 2017 |
| RASMUS AND DIANE RASMUS; | : | |
| DOUGLAS HOGREBE, CHERY | : | |
| HOGREBE; AND NATIONAL | : | |
| COOPERATIVE BANK, FSB | : | |

Appeal from the Order Entered August 23, 2017
In the Court of Common Pleas of Luzerne County Civil Division
at No(s): 201301823

BEFORE: PANELLA, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.: **FILED SEPTEMBER 12, 2018**

Becrett, L.L.C. (Appellant) appeals from the order denying its petition to open the order of summary judgment entered in favor of National Cooperative Bank, FSB (the Bank). We affirm.

Appellant is the owner of a strip mall property in Hanover, Pennsylvania. According to Appellant's complaint, in August of 2007, R & H Resources, Inc. (R & H) executed a lease for retail space with Appellant's predecessor, so that R & H could operate a hardware store. R & H's officers, Joseph M. Rasmus, Diane Rasmus, Douglas Hogrebe, and Chery Hogrebe, executed personal guarantees of R & H's obligations under the lease agreement. Appellant's Complaint, 2/12/13, at 6.

In October of 2007, R & H obtained a $630,000 loan from the Bank, under which the Bank gained a first priority security interest in R & H's equipment, fixtures, inventory, accounts, etc. **See** Bank's Answer, New Matter & Counterclaims, 9/4/13, at 7. In July of 2011, Appellant purchased the strip mall property from its predecessor and was assigned all of the title and interests the predecessor had in the lease with R & H. Appellant's Complaint at 2.

According to Appellant, sometime after November of 2010, R & H failed to make rent and other required payments under the lease, and in October of 2012, R & H closed its hardware store. **Id.** at 2-3, 9. Appellant and the Bank agreed that the store's inventory would be sold at auction and the proceeds held in escrow by Appellant's attorney, Michael J. Rowland, Esquire, while Appellant and the Bank negotiated their competing claims. Appellant's Brief at 13. These negotiations were apparently unsuccessful.

On February 12, 2013, Appellant filed a seven-count complaint, averring generally that R & H failed to make rent payments as required under the lease, and that Appellant was entitled, against the Bank, to the funds held in escrow. Count 1 of the complaint was against R & H only; Counts 2, 3, and 4 were against R & H, the Rasmuses and the Hogrebes; and Counts 5, 6, and 7 were against the Bank. R & H and Joseph M. Rasmus filed a joint answer, which averred, inter alia, that Diane Rasmus had filed a bankruptcy case. The Bank filed an answer, new matter, and two counter-claims against Appellant for the

funds held in escrow. Appellant filed an answer to the Bank's counterclaims. Diane Rasmus, Douglas Hogrebe, and Chery Hogrebe have not filed any pleading defending against the litigation.[1]

On February 5, 2015, the Bank filed a motion for summary judgment. Appellant filed a response, and the trial court denied summary judgment on June 29, 2015.

The next pleading on the docket is a January 7, 2016 "Motion to Compel Discovery and to Deem Admissions Admitted" filed by the Bank. The Bank stated that although Appellant's counsel, Attorney Rowland, acknowledged its request to schedule a deposition of Appellant's managing member, Kevin Beccia, Attorney Rowland did not respond to two earlier requests for discovery. The Bank further stated that Attorney Rowland's office had informed it that Attorney Rowland suffered a stroke on October 25, 2015, but the office expected to provide the requested discovery by November 16th.[2]

_____

[1] However, as stated *infra*, in October of 2017, Douglas and Chery Hogrebe filed a suggestion of bankruptcy, advising the trial court that they had commenced a bankruptcy action in October of 2013, which is past the date that a responsive pleading was due.

[2] The Bank's motion stated: "On October 26, 2015, [Appellant's] Counsel sent [the Bank's] counsel a letter stating that **Mr. Beccia** had suffered stroke on October 25, 2015 . . . ." Bank's Motion to Compel Discovery & to Deem Admissions Admitted, 1/7/16, at ¶ 8 (emphasis added). However, the Bank attached the letter as an exhibit, and the letter, signed by Attorney Rowland's assistant, clearly stated that it was Attorney Rowland who suffered a stroke. *Id.* at Exhibit E.

However, the Bank averred, Appellant failed to provide the discovery and after October 26, 2015, Attorney Rowland did not respond to any of the Bank's email or telephone inquiries. On February 23, 2016, the trial court issued a rule for Appellant to show cause why the Bank was not entitled to relief. Appellant did not respond. On March 28th, the court granted the Bank's "Motion to Compel Discovery and to Deem Admissions Admitted" and directed Appellant to respond to the Bank's interrogatories, provide the requested discovery, and produce Mr. Beccia for a deposition. The order also awarded attorneys' fees and costs of approximately $3,300 to the Bank.[3]

Ten months later, on January 26, 2017, the Bank filed a second motion for summary judgment on Counts 5, 6, and 7 of Appellant's complaint — the counts that were against the Bank — as well as both of the Bank's counterclaims against Appellant.[4] The Bank averred that Appellant still had

---

[3] The order did not state the amount of the attorneys' fees awarded, but a subsequent motion by the Bank stated it had requested $3,325, and at the August 2, 2017 hearing, Attorney Rowland acknowledged that the court awarded $3,300. *See* N.T., 8/2/17, at 70; Bank's Motion for Summary Judgment, 1/26/17, at 8.

[4] We note that on June 28, 2016, the Bank filed a "Motion for Additional Sanctions and Attorney's Fees," averring that Appellant had done nothing to comply with the trial court's March 28, 2016 order. The trial court issued a rule upon Appellant to show cause why the Bank was not entitled to relief, but Appellant did not file any response. However, there is no indication in the record or the trial docket that the court ruled upon the Bank's motion, and the parties' subsequent filings — which included the Bank's January 2016 motion to compel— did not mention the June 2016 motion. *See* Appellant's Petition

not responded to any of its discovery requests; that per the trial court's March 28, 2016 order, Appellant was deemed to have admitted the facts set forth in the Bank's request for admissions; and thus there were no genuine issues of material fact. The Bank further requested attorneys' fees and costs. Appellant did not respond. On March 30, 2017, the trial court granted the Bank's motion for summary judgment, directed that all funds held in escrow — which were still held by Attorney Rowland — be disbursed to the Bank, and awarded the Bank $34,578.05 in attorneys' fees. On May 8, 2017, upon praecipe by the Bank, judgment was entered in favor of the Bank on the counts cited above. According to Attorney Rowland, he sent a check to the Bank in the amount of $71,000, representing the amount of the escrowed funds, but the Bank did not cash it. N.T., 8/2/17, at 10, 74.

On June 14, 2017, five weeks after judgment was entered, Appellant's current counsel, Joseph P. Hanyon, Esquire, entered his appearance and filed a "Petition to Open Summary Judgment." The petition acknowledged that the entry of summary judgment against Appellant "was the result of inaction and neglect by" Appellant's prior counsel, Attorney Rowland, which in turn was caused by Attorney Rowland's serious illness, including a stroke on October 25, 2015. Appellant claimed that after the stroke, Attorney Rowland had

---

to Open Summary Judgment, 6/14/17, at 2-3; Bank's Motion for Summary Judgment, 1/26/17, at 8.

assured it that he was handling the case and that a settlement was imminent, while, in fact, Attorney Rowland was incapable of providing adequate legal representation. Appellant explained that it did not learn that judgment was entered until May 24, 2017, when Mr. Beccia returned home after a month-long trip abroad and saw a notice sent by the trial court. According to Appellant, Mr. Beccia contacted Attorney Rowland, who admitted that he was not competent to handle the case, and Appellant retained new counsel. Appellant's Motion to Open Summary Judgment, 6/14/17, at ¶ 9. Appellant asked the court to exercise its equitable power to open the judgment.

The Bank filed a response and the trial court conducted a hearing on August 2, 2017. Attorney Rowland testified that he suffered strokes in July, August, and October of 2015, and that since November of 2015, he had six or seven "stroke episodes," which involved vomiting and dizziness. N.T., 8/2/17, at 65-67. Attorney Rowland was also diagnosed with retinopathy in March of 2015, which rendered him unable to read and caused him to rely on a secretary to read mail and documents to him. *Id.* at 67-69. Since November of 2015, Attorney Rowland has worked "on a restricted schedule"; he works in the office from 9:00 a.m. to noon or 1:00 p.m., becomes "wiped out," and then goes home to "sleep most of the rest of the day." *Id.* at 67.

Attorney Rowland admitted that after October 2015, the only status update he gave to Mr. Beccia was that he believed the case would settle, and that he purposefully did not tell Mr. Beccia about the Bank's request for

discovery, the court's March 28, 2016 order (which granted the Bank's motion to compel and imposed awarded attorneys' fees to the Bank), the Bank's second motion for summary judgment, or the March 30, 2017 order (granting summary judgment and awarding the Bank approximately $34,578 in attorneys' fees). *Id.* at 70, 75. Attorney Rowland acknowledged that he knew that the March 30, 2017 order granting the Bank's motion for summary judgment "was very bad news for" his client, yet he did not notify Mr. Beccia. *Id.* at 71. Attorney Rowland further testified that he sent a check for $71,000 to the Bank but likewise did not inform Mr. Beccia. *Id.* at 70-71. Attorney Rowland admitted that he lied to Mr. Beccia, but stated that he did so because he was embarrassed and ashamed. *Id.* at 72-73. When repeatedly asked why he did not respond to the Bank's various motions or communicate with his client, Attorney Rowland responded that he did not know. *Id.* at 72 (when asked why he did not notify Mr. Beccia that he was sending a $71,000 check to the Bank, Attorney Rowland stated: "To be honest, I searched my soul many times and I don't know the answer to that question . . . ."), 75 ("I can only say to you that I don't have an excuse and I don't have an explanation."), 75-76 ("I don't have either an explanation or an excuse for what has happened.") Attorney Rowland also testified that Mr. Beccia called him on May 30, 2017 about the judgment that was entered, and Attorney Rowland advised him to seek new counsel. *Id.* at 74. Finally, Attorney Rowland, who was a sole practitioner, stated that this may be the last year that he practices

law, and that he has not maintained professional liability insurance since 2010. *Id.* at 76-77.

On August 23, 2017, the trial court denied Appellant's "Petition to Open Summary Judgment," finding that Attorney Rowland's conduct "was not the type which would warrant the extraordinary relief requested by [Appellant] and which has sometimes resulted in the opening of judgments on equitable grounds." Trial Court Opinion, 11/17/17, at 2, citing *Estate of Gasbarini v. Med. Ctr. Of Beaver Co., Inc.* 409 A.2d 343, 345 (Pa. 1979) (attorney's neglect does not constitute extraordinary cause requiring the granting of the equitable relief of opening a judgment).

Appellant timely appealed. On October 30, 2017, Douglas and Chery Hogrebe filed a suggestion of bankruptcy, advising the court that they had filed a bankruptcy petition four years earlier, on October 8, 2013. The trial court did not order compliance with Pa.R.A.P. 1925(b), but issued an opinion.

Appellant presents the following issues for our review:

1. When it considered [Appellant's] Petition to Open an interlocutory summary judgment order, did the lower court err when, rather than requiring a showing of "proper cause," it applied the standard for granting *nunc pro tunc* appeals?

2. Did [Appellant] show "proper cause" for the opening of the interlocutory order?

3. Even if "extraordinary cause" is the applicable standard, did the lower court abuse its discretion by denying the Petition to Open?

Appellant's Brief at 4.

We summarize Appellant's arguments together. First, Appellant avers

that the trial court erred in requiring it to show fraud or extraordinary cause for opening the judgment. Instead, Appellant contends, it merely had to establish "proper cause," the lower standard applicable to petitions to open default judgments. *Id.* at 25, citing **Lewis v. Reid**, 366 A.2d 923, 924 (Pa. Super. 1976) (for court to open judgment of *non pros*, "(1) a petition to open must be promptly filed; (2) there must be a reasonable explanation or excuse for the default; and (3) facts constituting grounds for a cause of action or a meritorious defense must be alleged"). Appellant maintains that the March 30, 2017 order granting the Bank's motion for summary judgment was an interlocutory order — because it did not dispose of all the issues between all the parties — and thus, unlike a final order, the trial court retained the power to modify it at any time during the proceedings.[5] Appellant's Brief at 24, citing

_____

[5] While the Bank argues the court's March 30, 2017 order granting its motion for summary judgment was a final order, Bank's Brief at 14, we agree with Appellant that it was not, because the order did not dispose of the claims against the remaining five defendants — R & H, Joseph and Diane Rasmus, and Douglas and Chery Hogrebe. *See* Appellant's Brief at 24-26. Were Appellant appealing from that order, this Court would not have jurisdiction. *See* Pa.R.A.P. 341(c) (when more than one claim is presented or when multiple parties are involved, trial court may enter a final order as to fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case; in the absence of such a determination, the order shall not constitute a final order); **K.H. v. J.R.**, 826 A.2d 863, 869 (Pa. 2003) (in action involving multiple defendants, and in the absence of an express determination by the trial court under Rule 341(c), an order granting summary judgment as to one party is treated as appealable as of right only after the disposition of the claims involving the remaining parties).

***Key Automotive Equip. Specialists v. Abernethy***, 636 A.2d 1126, 1128 (Pa. Super. 1993) (while trial court has 30 days to reconsider a final order, such time period is not applicable to an interlocutory order).

In Appellant's second issue, it asserts that under the standard for a petition to open a default judgment, it established why judgment should be opened: its prior counsel, Attorney Rowland, had poor eyesight and had suffered several strokes, was only able to work part-time, admitted that he failed to inform Appellant of key aspects of the litigation, including the Bank's motion to compel and motion for summary judgment, as well as the court order granting summary judgment, and admitted that he "engaged in fraud by misleading his client" and that he was dishonest. Appellant's Brief at 38-42. Appellant argues that in defining "proper cause," the courts have distinguished an attorney's "oversight or neglect" from "deliberate decisions made by attorneys . . ." Appellant's Brief at 32. Appellant analogizes this case to others in which an attorney's illness or oversight justified opening a default judgment and a judgment *non pros*. ***Id.*** at 32-33, citing ***Dep't of Transportation v. Nemeth***, 442 A.2d 689, (Pa. 1982) (defense attorney's failure to answer complaint, due to confusion surrounding dissolution of his

---

Here, however, judgment has been entered in favor of the Bank, and Appellant is appealing from the order denying its motion to open judgment. Accordingly, Appellant may take this interlocutory appeal as of right. ***See*** Pa.R.A.P. 311(a) ("An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from . . . [a]n order refusing to open, vacate, or strike off a judgment."); Appellant's Reply Brief at 3 (citing Rule 311(a)(1)).

law firm, was an oversight and sufficient justification to support opening default judgment); **Thorn v. Clearfield**, 218 A.2d 298, 298-299 (Pa. 1966) (plaintiffs' failure to file complaint, due to their attorney's heart relapse and aortic valve disease, was sufficient equitable consideration to set aside judgment of *non pros*).

In its final issue, Appellant relies on the reasons presented in its second issue to argue, in the alternative, that even if it were required to show "extraordinary cause," it has succeeded in doing so, because it showed that Attorney Rowland engaged in fraud. Appellant cites **Estate of Gasbarini**, in which the plaintiff's attorney filed a complaint on November 15, 1974, then failed to respond to preliminary objections, and was suspended from the practice of law on November 27, 1974. **See Estate of Gasbarini**, 409 A.2d at 344. In January of 1975, the trial court dismissed the complaint after the attorney failed to appear for argument and entered judgment in favor of the defendant. **Id.** Meanwhile, however, the attorney had assured the plaintiffs "that he was providing proper representation."[6] **Id.** Our Supreme Court held that the trial court properly granted the plaintiff's petition to open the judgment, reasoning, "We can perceive no greater equitable considerations requiring opening of a judgment than the fact that the attorney allegedly representing [the plaintiff] had been suspended from the practice of law prior

---

[6] The attorney was subsequently disbarred from the practice of law in May of 1975. **Estate of Gasbarini**, 409 A.2d at 345.

to the hearing at which [defense] preliminary objections had been sustained and [the plaintiff's] complaint dismissed. Further, [the plaintiff's] attorney never notified [the plaintiff] of his suspension." *Id.* at 345. Appellant reasons that here, "Attorney Rowland's pattern of deception . . . prevented [it] from taking timely action to retain another attorney." Appellant's Brief at 55.

While Appellant relies on *Interest of C.K.* for arguing why the standard for opening **default** judgments should apply, that decision also explains:

> A final judgment in a contested proceeding is to be contrasted with . . . a final judgment entered by default . . . . [A] judgment entered by default . . . is not entered after both parties have had a full opportunity to present their positions on the issues and the interest in preserving the finality of such judgments is correspondingly lower than where a final judgment has been entered after a complete adverse proceeding. Thus, a default or confessed judgment may be opened at any time upon proper cause shown. Similarly, an interlocutory order of a trial court may be modified at any time. . . .

*See Interest of C.K.*, 535 A.2d at 641 n.3 (citations omitted). On the other hand:

> a judgment entered in an adverse proceeding ordinarily cannot be disturbed after the expiration of the term at which it is entered . . . . . [T]he discretionary power of the court over such judgments is quite limited. Generally, the rule has been relaxed only where fraud appeared or the circumstances were so grave or compelling as to constitute "extraordinary cause" justifying intervention by the court.

*Id.* at 640 (citations omitted). This extraordinary cause "is generally an oversight or action on the part of the court or the judicial process which operates to deny the losing party knowledge of the entry of final judgment so that the commencement of the running of the appeal time is not known to the

losing party." ***Shelly Enters., Inc. v. Guadagnini***, 20 A.3d 491, 494 n.3 (Pa. Super. 2011) (citation omitted). A party's attorney's neglect "is not enough" to show extraordinary cause. ***Interest of C.K.***, 535 A.2d at 641.

In arguing its "Petition to Open Summary Judgment" should have been evaluated against the lower standard imposed on petitions to open default judgments, Appellant does not acknowledge that judgment was entered after "a complete adverse proceeding." ***See Interest of C.K.***, 535 A.2d at 641 n.3. Unlike a default judgment, which is entered simply when a complaint is filed and the defendant fails to answer, in this case, Appellant filed a complaint, the Bank filed an answer and counterclaims, and Appellant filed an answer to those counterclaims. Additionally, when the Bank filed its first motion for summary judgment in February of 2015, Appellant filed a response, and the trial court denied the motion. When the Bank filed its January 2016 motion to compel and January 2017 motion for summary judgment, both with rules to show cause upon Appellant, Appellant had — Attorney Rowland's health issues notwithstanding — "a full opportunity to present [its] positions on the issues." ***See id.*** Accordingly Appellant's claim that its "Petition to Open Summary Judgment" should have been treated as a petition to open a default judgment is meritless. The trial court did not err in evaluating Appellant's petition by the standard for petitions to open judgment. ***See*** Trial Court Opinion, 11/17/17, at 2.

In light of the foregoing, we do not reach Appellant's second claim —

that it established "proper cause" under the standard applicable to petitions to open default judgments.

In reviewing Appellant's third claim — that it showed "extraordinary cause" to open the judgment — we hold no relief is due. We reiterate that when Attorney Rowland was repeatedly asked why he did not inform his client, Appellant, of the developments in the litigation, he replied that he did not know or that he had no excuse. **See** N.T., 8/2/17, at 72-73, 75-76. This scenario is distinguishable from **Estate of Gasbarini**, 409 A.2d at 345 ("We can perceive no greater equitable considerations requiring opening of a judgment than the fact that the attorney allegedly representing appellant had been suspended from the practice of law . . . ."). Furthermore, Appellant has not alleged any court action or oversight which operated to deny it knowledge of the entry of judgment. **See Interest of C.K.**, 535 A.2d at 641. Instead, we agree with the trial court that, pursuant to the principle that attorney neglect "is not enough," Attorney Rowland's conduct in this matter does not warrant the extraordinary relief of opening judgment. **See id.** Accordingly, we affirm the order denying Appellant's "Petition to Open Summary Judgment."

Order affirmed.

Judge Panella joins the memorandum.

P.J.E. Ford Elliott files a dissenting memorandum statement.

- 14 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/12/2018